CLARK v CADILLAC GAGE

(CLARK v SECOND INJURY FUND)

Docket No. 66510. Argued January 5, 1982 (Calendar No. 12).—Decided December 23, 1982.

John Clark was awarded workers' compensation for the loss of the industrial use of his left leg in a work-related accident. He then sought and was awarded total and permanent disability benefits for the loss of use of his leg and a prior loss of his left eye. The Second Injury Fund appealed, and the Workers' Compensation Appeal Board affirmed, finding that the admission of the plaintiff's prior loss of an eye and a stipulation of the loss of the use of his leg by his employer, Cadillac Gage, were binding on the fund. The Court of Appeals, V. J. Brennan, P.J., and Bronson and Deming, JJ., reversed and remanded to the appeal board (Docket No. 44297). The plaintiff appeals.

In an opinion by Justice Kavanagh, joined by Chief Justice Fitzgerald and Justices Williams and Levin, the Supreme Court *held:*

The Second Injury Fund may dispute its liability for basic and differential benefits where the award of benefits is based on a stipulation of entitlement by an employer. The fund is entitled to a ruling on the adequacy of the evidence by the Workers' Compensation Appeal Board, despite the stipulation.

1. The plaintiff relies on language in a decision of the Supreme Court that the fund's liability is derivative of the employer's liability and that there must be a prior determination of employer liability and argues that the fund may not relitigate issues determined between the employee and the employer or carrier. The case relied on was one in which there was a redemption of employer liability before the assertion of a claim against the Second Injury Fund, and it does not control disposition of this case, where there is no redemption. The language relied on must be limited to that case. Establishment of liability of the employer is a prerequisite to liability of the Second Injury Fund. The liability of the fund derives from the

REFERENCE FOR POINTS IN HEADNOTES
[1-3] 82 Am Jur 2d, Workmen's Compensation §§ 333, 334, 407.

workers' compensation act, as does the liability of the employer. The act provides for liability of the fund only where there is liability of the employer, but that does not make the fund's liability derivative of the employer's.

2. In this case, the determination of the employer's liability was made on the basis of evidence offered at a hearing. The correctness of that determination was subject to review by the appeal board. The board's acceptance of the employer's stipulation suggests that it did not consider the sufficiency of the other evidence because of the stipulation.

Justice Ryan, joined by Justice Coleman, concurring in the result, would not limit the language in the earlier case to that case only. Before the Second Injury Fund is found liable the employer must be found liable, but if an employer is found to be liable, it does not necessarily follow that the fund is liable. The fund's liability is derivative, but it is not precluded from fully litigating the issue of a worker's injury. Where, as in this case, the employer has no real interest at stake in stipulating that the employee suffered a disabling injury, it would be unfair to hold the fund to the stipulation.

Affirmed.

101 Mich App 513; 300 NW2d 622 (1980) affirmed.

OPINION OF THE COURT

1. WORKERS' COMPENSATION — SECOND INJURY FUND — LIABILITY TO PAY BENEFITS.

The workers' compensation act provides that the Second Injury Fund is liable to pay basic and differential benefits after a worker suffers a second permanent disability only where the employer is liable for the disability; however, the provision does not make the fund's liability derivative of the employer's, and the fund may dispute its liability where the award of benefits is based on a stipulation of liability by the employer and not on a consideration of the sufficiency of the evidence (MCL 418.52[1]; MSA 17.237[521][1]).

2. WORKERS' COMPENSATION — SECOND INJURY FUND — LIABILITY TO PAY BENEFITS.

The liability of the Second Injury Fund to pay basic and differential benefits after a worker suffers a second permanent disability derives from the workers' compensation act; the fact that the act provides that the fund is liable only under circumstances where the employer is liable does not convert the employer's liability into the source of the fund's liability (MCL 418.521[1]; MSA 17.237[521][1]).

OPINION CONCURRING IN RESULT BY RYAN, J.

3. WORKERS' COMPENSATION — SECOND INJURY FUND — LIABILITY TO
PAY BENEFITS.

The liability of the Second Injury Fund to pay basic and differential benefits after a worker suffers a second permanent disability derives from the employer's liability; however, a determination that the employer is liable does not require the conclusion that the fund is also liable; the fund may litigate the issue of the worker's injury and is not bound by the employer's stipulation of liability (MCL 418.521[1]; MSA 17.237[521][1]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Robert W. Howes*) for the plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Eileen D. Zielesch,* Assistant Attorney General, for the Second Injury Fund.

KAVANAGH, J. This case concerns the question of whether the liability of the Second Injury Fund for workers' compensation benefits is "derivative" from the liability of an employer and whether the fund may dispute its liability for basic and differential benefits in a case wherein the employer has stipulated to or agreed with the employee's entitlement to compensation for a prior loss.

We hold the Court of Appeals was correct in remanding this case to the Workers' Compensation Appeal Board and accordingly affirm its decision.

On June 25, 1976, following a hearing, plaintiff was awarded compensation for the loss of industrial use of his left leg in an August, 1973, work-related accident. It was stipulated that defendant's responsibility did not extend beyond payment for the 215 weeks of scheduled loss benefits. The employer and insurer did not appeal from what is referred to as a "stipulation award".

On July 28, 1976, plaintiff filed a petition seeking benefits for total and permanent disability. Plaintiff alleged the loss of industrial use of the left leg preceded by the loss of an eye.[1] At a hearing held on August 26, 1977, plaintiff testified that he had had the lenses removed from his left and right eyes in August 1970 and January 1974. Medical testimony was received from Dr. Lawrence Hoffman on behalf of the Second Injury Fund and from Dr. Lawrence Stocker on behalf of the plaintiff. Dr. Stocker, an opthalmologist, testified that he began treating plaintiff in December 1967, and on August 18, 1970, performed a cataract extraction of the natural lens of the left eye. On January 29, 1974, a similar operation was performed on plaintiff's right eye. The operations left plaintiff with only "protective vision", *i.e.,* vision which would enable plaintiff to see the outlines of objects but not to read, drive a car, etc. Following each surgical operation, plaintiff was fitted with a contact lens which returned his vision in the affected eye to 20/20 or better. Dr. Stocker believed that plaintiff's contact lenses might cause him difficulty in a dusty environment, and that pain might also interfere with the wearing of the lenses.

Dr. Hoffman, also an opthalmologist, examined plaintiff on March 9, 1977, at the request of the

---

[1] MCL 418.521(1); MSA 17.237(521)(1) provides:

"If an employee has a permanent disability in the form of the loss of a hand, arm, foot, leg or eye and subsequently has an injury arising out of and in the course of his employment which results in another permanent disability in the form of the loss of a hand, arm, foot, leg or eye, at the conclusion of payments made for the second permanent disability he shall be conclusively presumed to be totally and permanently disabled and paid compensation for total and permanent disability after subtracting the number of weeks of compensation received by the employee for both such losses. The payment of compensation under this section shall be made by the second injury fund, and shall begin at the conclusion of the payments for the second permanent disability."

Second Injury Fund. Dr. Hoffman testified that plaintiff's corrected vision was 20/30+ in the right eye and 20/20− in the left eye. Uncorrected vision was 20/200 in both eyes.

On the basis of the above evidence, the hearing referee issued a decision on December 13, 1977, finding total and permanent disability and assigning liability to the Second Injury Fund, specifying that plaintiff "had a permanent disability in the form of the loss of his left eye as of 8/18/70, and, subsequently, on 7/1/74, lost the industrial use of his left leg as a result of the injury of 8/13/73".

The Second Injury Fund appealed. At oral argument on January 4, 1979, defendant Cadillac Gage agreed with plaintiff as to the claimant's prior eye loss. The WCAB found that this admission and the stipulation of loss of leg were binding on the Second Injury Fund.

The Second Injury Fund appealed to the Court of Appeals. In a published opinion released November 19, 1980, the Court reversed and remanded to allow the WCAB to address the merits of the appeal. *Clark v Cadillac Gage,* 101 Mich App 513; 300 NW2d 622 (1980).

In finding the Second Injury Fund bound by the employer's admission of eye loss and stipulation of leg loss, the appeal board relied upon *White v Weinberger Builders, Inc,* 397 Mich 23; 242 NW2d 427 (1976). In *White,* the employees' claims for compensation benefits were disputed by their employers, and in each case the employer's liability was terminated by a redemption agreement and lump-sum settlement. The redemption was made without admitting liability. Each claimant in *White* subsequently petitioned the Second Injury Fund seeking differential benefits under MCL 418.521(2); MSA 17.237(521)(2). The fund denied

liability on the basis that the liability of the employers had not been admitted or adjudicated at a hearing. The Court of Appeals and this Court agreed, holding that establishment of employer liability was a prerequisite to Second Injury Fund liability. Both opinions contained language indicating that the fund's liability was derivative of that of the employer.

*White* "binds the fund to the stipulation and admission entered into by the defendant employer" in the appeal board's opinion. The Court of Appeals disagreed with this analysis:

"We do not believe *White* is controlling in the present case, which does not involve the differential benefits provision of the act. Derivative liability and a passive role for the Second Injury Fund make sense where the employer and its insurer have a sufficient stake in the outcome of the case to resist a dubious claim. The instant case does not present such a situation since only the Second Injury Fund would have been required to pay benefits for total and permanent disability if plaintiff prevailed. By admitting that plaintiff had a preexisting disabling eye injury, the employer did not render itself 'liable' for any additional benefits." 101 Mich App 516.

Plaintiff argues that the above decision is erroneous in several respects. First, the fund's liability is always derivative of the employer's liability, and the fund may not relitigate issues determined between the employee and the employer or carrier.

The Second Injury Fund responds that the Court of Appeals correctly found *White* inapplicable because *White* did not involve a stipulation by the employer or the fund's assumption of liability for basic compensation.

We recognize the distinction between "basic compensation" and "differential benefits" which

the Court of Appeals used to explain its decision distinguishing this case from *White.* We base our agreement with their conclusion on other grounds, however.

Because *White* involved a redemption of employer liability prior to the assertion of a claim against the Second Injury Fund it does not control disposition of this case wherein no redemption is involved.

We are now persuaded that the language approved in *White*—"liability of the Second Injury Fund is derivative from that of the employer" and "a prior determination of employer liability" must be limited to that case only.

The phrase "derivative from" refers to a source. The liability of the fund "derives" from the statute as does the liability of the employer. The fact that the statute provides fund liability only under circumstances wherein it provides employer liability does not convert employer liability into the source of the fund's liability. The only source of liability is the statute.

Likewise unless we be concerned only with procedural regulation, in giving effect to the statute, the phrase "prior determination of employer liability" should be read "determination of (prior) employer liability", for the statute provides fund liability without regard to time but only to the circumstance of employer liability.

The time when such determination is made, apart from a matter of procedure, should make no difference. The statute provides fund liability only under circumstances giving rise to employer liability.

Here there was a determination of liability by the referee upon the evidence adduced at a hearing. The correctness of that determination was

properly subject to review by the appeal board. The board's acceptance of the employer's "stipulation" or "agreement" to the prior eye injury suggests that it did not consider the sufficiency of the other evidence because of the stipulation. The fund was entitled to the appeal board's ruling on the adequacy of the evidence despite the stipulation.

For this reason the Court of Appeals remand to the WCAB was in order.

Affirmed.

FITZGERALD, C.J., and WILLIAMS and LEVIN, JJ., concurred with KAVANAGH, J.

RYAN, J. *(concurring in the result).* I concur separately, basing my agreement in the result on different grounds. Unlike my colleague, I do not believe that the theory of *White v Weinberger Builders, Inc,* 397 Mich 23; 242 NW2d 427 (1976), which was upheld in *Grice v General Motors Corp,* 407 Mich 465; 286 NW2d 238 (1979), needs to be limited to that case only.

In *White,* we affirmed the lower court's holding that the " 'liability of the Second Injury Fund is derivative from that of the employer, so that the fund cannot be subjected to a separate, independent hearing as to liability for differential payments once the employer's alleged prospective liability has been redeemed via a negotiated settlement' ". *White, supra,* p 30, quoting 49 Mich App 430, 432; 212 NW2d 307 (1973). This "derivative liability" language of *White* does not mean that the Second Injury Fund is precluded from fully litigating the issue of the plaintiff's eye injury in this case.

The operative proposition is simply this: if the Second Injury Fund is to be liable, then the employer must first be found liable. In *White,* the

employer had not been found liable by adjudication or stipulation, thus the Second Injury Fund was not liable—an eminently logical conclusion given the proposition.

Logic teaches us that the converse of the proposition is not necessarily true, and the converse is what the plaintiff is trying to establish: if the employer is found liable, as he was, then the Second Injury Fund is liable. *White* does not stand for that, and the Workers' Compensation Appeal Board improperly cited it as authority.

Simple fairness also prompts our affirmance of the decision below. The factual scenario in this case reveals that the employer had no incentive to fully litigate the issue of whether the plaintiff had a preexisting disabling eye injury. As the Court of Appeals noted: "By admitting that plaintiff had a preexisting disabling eye injury, the employer did not render itself 'liable' for any additional benefits". *Clark v Cadillac Gage,* 101 Mich App 513, 516; 300 NW2d 622 (1980). Since the employer had no real interest at stake in stipulating that the plaintiff suffered a disabling eye injury, it would be unfair to hold the Second Injury Fund to the employer's stipulation.

COLEMAN, J., concurred with RYAN, J.

RILEY, J., took no part in the decision of this case.